# Begley, Appellant, v. Ruud Manufacturing Company.

*Negligence—Master and servant—Dangerous machinery—Assumption of risk—Judgment for defendant n. o. v.*

An employee, who was injured while adjusting a belt connecting a gas engine with a generator while the engine was running rapidly, cannot recover from his employer for the resulting injuries where it appears that the belt was not required to be equipped with a belt shifter under the Act of May 2, 1905, P. L. 352, because it was a permanent means of connection between the engine and generator and was not intended to be shifted, and where, though plaintiff was ordered by the defendant's superintendent to adjust the belt while the engine was running, it was dangerous so to do only if the engine was running rapidly of which plaintiff was fully aware; and where there was no other evidence from which defendant's negligence could be inferred.

Argued Oct. 19, 1914. Appeal, No. 170, Oct. T., 1914, by plaintiff, from judgment of C. P. Allegheny Co., Jan. T., 1913, No. 1700, for defendant non obstante veredicto, in case of William H. Begley v. Ruud Manufacturing Company. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass for personal injuries. SHAFER, J., filed the following opinion:

The action is trespass by an employee against his employer, for damages. The plaintiff was employed by the defendant as an engineer to run a ten-horse power gas engine, which was used to drive a generator for electricity. The generator stood opposite the engine and about fifteen feet distant from it. Upon the engine was a wheel or pulley about two feet in diameter, and opposite on the generator was a wheel or pulley about five or six inches in diameter, which were connected by a belt five or six inches in width. This belt was a permanent means of connection between the engine and the generator, in-

tended to run on these two pulleys or wheels, and was not to be moved or shifted to start the machinery, there being no pulley to which it could be shifted. The gas engine was somewhat difficult to start, and the plaintiff and other workmen who came to his assistance had difficulty in cranking it up, that is in turning the flywheel, and of course the whole engine, including the belt and the generator, so as to cause the proper ignition. At the time of the accident the plaintiff, who had been working at the engine for a couple of weeks, and two other employees of the defendant were trying to start the engine. To make the engine easier to crank they took the belt off the pulleys, and the plaintiff and the other workmen undertook to start the engine and then put the belt on the pulleys while the engine was in motion. The plaintiff undertook to put the belt on the large wheel at the engine and another employee undertook to put it on the small wheel at the generator at the same time, and the third was managing the inflow of gas. The engine was started up, and while the plaintiff was in the act of putting the belt on the large wheel it either came off of the other pulley or came out of the hands of the other workman and was whirled around, and thereby struck the plaintiff and caused the injuries complained of.

The pleadings in the case show a remarkable uncertainty on the part of the plaintiff as to what the negligence of the defendant consisted in. In his original statement he alleged that the belt was defective and that nearly every morning he had to get the assistance of laborers to put the belt on the engine, that the engine was in bad repair and that the superintendent had promised to repair it; that the generator was not supplied with a guard to keep the belt on, and that the plaintiff was assured by the superintendent that the work was not dangerous. The plaintiff afterwards, not long before the trial, amended the statement by adding to it that the gas engine was in bad repair and would not start when the belt was on it, and that the plaintiff was ordered by the

superintendent, after he got the engine started with the belt off, not to stop the engine to put the belt on but to put it on while the engine was running; that the engine or pulley was not equipped with a belt shifter for the purpose of throwing on or off the belt, as provided by the Act of May 2, 1905, P. L. 352, and that the pipes were so placed on the floor that the plaintiff's foot was caught and he was prevented from escaping from the belt when it came at him; and that it was customary for employees of defendant company to put the belt on the engine while it was running and the pulleys turning, and that for months or perhaps years there was a large part of the time that the engine would not start except when the belt was off.

No evidence was given tending to show that there was any want of repair in the machinery. The fact that there was no shifting device was held, at the trial, not to be negligence because there was nothing to be shifted, and there was no evidence that the engine was intended to be operated by taking off the belt to start it and then put it on while it was running. These matters having been excluded from the consideration of the jury they were instructed that if they found the superintendent had instructed the plaintiff to put the belt on while the engine was in motion, and if the superintendent knew or ought to have known that this was dangerous, and the plaintiff did not know it was dangerous, then the plaintiff might recover. It is insisted by the defendant that this is not alleged in the pleadings, and that if it were, there would be no evidence that putting on the belt while the engine was in motion was dangerous, or supposed to be so. In fact, it was testified by the plaintiff that it was not dangerous to put the belt on when the engine was running slow, but that it would be dangerous when it was running fast and that he would not attempt it. When, therefore, the superintendent directed him to perform the operation in this way he did not tell him to do a dangerous thing, and the danger arose from him at-

tempting to put on the belt when the speed was too high, which was not in consequence of any instructions of the superintendent. We are therefore of opinion that there was nothing to submit to the jury in this case, and that the motion for judgment non obstante veredicto must be granted.

The plaintiff has moved for a new trial on the ground of the inadequacy of the verdict, and if the plaintiff was in fact injured as he claimed to have been, the verdict would be inadequate. The plaintiff's injuries, however, such as they existed some months after the accident, were purely subjective. Nothing can be seen upon his body to indicate any result of the injury, and the attempt of the plaintiff and of his physicians to make out that his arm was atrophied to some extent and that this fact indicated the existence of the supposed injuries, was met by an offer to have his arm measured in the presence of the jury, whereupon it was admitted by the plaintiff that there was no difference whatever in the size of his arms.

The jury found a verdict for the plaintiff for $1,738. Plaintiff moved for a new trial on the ground of inadequacy of the verdict and defendant moved for judgment non obstante veredicto. The court dismissed plaintiff's motion and entered judgment for defendant n. o. v. Plaintiff appealed.

*Error assigned* was in entertaining judgment for defendant non obstante veredicto.

*Thomas M. Marshall, Jr.,* with him *Thomas M. Marshall,* for appellant.

*S. S. Robertson,* for appellee.

PER CURIAM, January 2, 1915:
A majority of the court are of opinion that the judg-

ment should be affirmed for the reasons stated in the opinion of the learned judge of the Common Pleas.

Judgment affirmed.